BRYAN SCHRODER
United States Attorney

JOHN A. FONSTAD
Assistant U.S. Attorney
U.S. Attorney's Office, District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska   99513-7567
Telephone: (907) 271-5071
Facsimile: (907) 271-2344
E-mail:   John.Fonstad@usdoj.gov

Attorney for the Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STEVEN STOUFER,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF JUSTICE, OFFICE OF INSPECTOR GENERAL; OFFICE OF THE ATTORNEY GENERAL; UNITED STATES MARSHALS SERVICE; and DEPARTMENT OF JUSTICE,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 3:20-cv-00046-SLG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants Federal

Bureau of Investigation (FBI); Department of Justice, Office of Inspector

General (DOJ-OIG); Office of Information Policy (DOJ-OIP)[1], on behalf of the Office of the Attorney General (DOJ-OAG); the United States Marshals Service (USMS); and the Department of Justice (collectively, Defendants[2]) move for summary judgment. *Pro se* plaintiff Steven Stoufer has sued each Defendant under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Dkt. 29 (first amended complaint, supplement). Mr. Stoufer contends that the Defendants have not properly responded to his FOIA requests. Dkt. 29 ¶¶ 12-30; *see also id*. ¶¶ 31-34. He is wrong. The Defendants have properly discharged their obligations under FOIA and, accordingly, are entitled to summary judgment.

For each Defendant, this case presents two questions: (1) did the agency conduct an adequate search and (2) if the agency located responsive documents, did the agency properly invoke FOIA exemptions when

---

[1] DOJ-OIP is the Department of Justice component responsible for handling the FOIA administration for, *inter alia*, the Office of the Attorney General.

[2] This matter should be captioned *Stoufer v. Department of Justice*, as FBI, DOJ-OIG, DOJ-OIP, DOJ-OAG, and USMS are not "agencies" within the meaning of FOIA. 5 U.S.C. § 552(f)(1). Rather, they are components of the Department of Justice. In apparent recognition of this point, Plaintiff amended his complaint to name the Department of Justice as a Defendant. *Compare* Dkt. 1 at 1 (original complaint), *with* Dkt. 29 at 1 (operative complaint). Throughout this motion, the term "Defendants" is used for ease in relation to the case caption, but the Department of Justice is the only proper "Defendant" agency.

withholding documents or portions of documents that were otherwise responsive to Mr. Stoufer's FOIA requests. Because the answer to both questions is "yes," the Court should grant summary judgment pursuant to Federal Rule of Civil Procedure 56.

## FACTUAL BACKGROUND

Mr. Stoufer alleges that "the FBI or another law enforcement organization" attempted to "recruit" him to assist an "interactive surveillance team" and to "participate in [a] tribal disruption." Dkt. 22 ¶¶ 6-8. He contends that he rejected these attempts at recruitment, and that "the FBI or another law enforcement organization" retaliated against him. *Id.* ¶ 9. Mr. Stoufer sent FOIA requests to the FBI, DOJ-OIG, DOJ-OIP seeking records of DOJ-OAG, and USMS in an effort to learn more about this alleged conduct and to obtain any records that each component had regarding him. *See id.* ¶¶ 4, 12, 25, 29.

## I. STOUFER'S FOIA REQUEST TO THE FBI.

**Procedural history.** On March 21, 2018, Mr. Stoufer electronically submitted a FOIA request to the FBI seeking any FBI records regarding himself in an effort to learn "about potential FBI abusive and illegal behavior/policies." Seidel FBI Decl. (Ex. A) at 15 (the FOIA request); *accord* Dkt. 29 ¶ 17. On April 13, 2018, FBI notified Mr. Stoufer that it had divided

his request into two categories for separate processing: (1) with regard to the portion of Mr. Stoufer's request seeking records regarding himself, FBI assigned a request tracking number of 1400794-000 and (2) with regard to the portion of Mr. Stoufer's request seeking records regarding FBI surveillance and warrants, FBI assigned a request tracking number NFP-93664. Dkt. 29 ¶ 18; *see also* Dkt. 28 ¶18; Seidel FBI Decl. (Ex. A) at 18, 23 (FBI's response letters).

With regard to request number 1400794-000 (the request for records regarding Mr. Stoufer), the FBI stated that, after conducting a search of its Central Records System, it found no responsive records. Seidel FBI Decl. (Ex. A) at 18-19 (FBI response letter); *accord* Dkt. 29 ¶ 18. Mr. Stoufer filed an administrative appeal, asserting his belief that he has "been under surveillance by the FBI for several years." Seidel FBI Decl. (Ex. A) at 37 (the appeal letter). DOJ-OIP Administrative Appeals Staff[3] denied his administrative appeal. *Id.* at 46 (the appeal decision); *accord* Dkt. 29 ¶ 21.

With regard to request number NFP-93664 (the request for records regarding FBI surveillance and warrants), the FBI stated that Mr. Stoufer's

---

[3] DOJ-OIP's Administrative Appeals Staff is a separate and distinct unit within DOJ-OIP, which adjudicates administrative appeals of initial request responses made by Department of Justice components.

request did "not contain enough descriptive information to permit a search" and asked Mr. Stoufer to "please provide us more specific information." Seidel FBI Decl. (Ex. A) at 23 (FBI response letter); *accord* Dkt. 29 ¶ 20. Mr. Stoufer sent additional details, explaining that he was interested in alleged "interactive surveillance and one-plus-one interactive surveillance" of him. Seidel FBI Decl. (Ex. A) at 27-35; *accord* Dkt. 29 ¶ 20. Thereafter, FBI issued a further response, indicating that it construed this request as another way of seeking information that the FBI might have regarding Mr. Stoufer. Seidel FBI Decl. (Ex. A) at 49. FBI further stated that it conducted a search of its Central Records System and found no responsive documents. *Id.* Mr. Stoufer did not file an administrative appeal.

**FBI's search for responsive information.** The FBI maintains a Central Records System (CRS), which "is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its [] missions." Seidel FBI Decl. (Ex. A) at 5-6 ¶¶ 16-17. CRS includes "individuals, organizations, or other subjects of investigative interest" and is used by FBI personnel "in the performance of their law enforcement duties." *Id.* at 6-7 ¶ 18. CRS contains, among other things, entries for each "individual . . . that is a subject or focus of an investigation"

*Stoufer v. DOJ*                             -5-
Case No. 3:20-cv-00046-SLG

and entries for each "individual . . . associated with the case but [who] are not the main subject(s) or focus of an investigation." *Id.* If the FBI had information that was responsive to Mr. Stoufer's request, that information would be in CRS. *Id.* at 11 ¶ 30.

When searching for any records regarding Mr. Stoufer, the FBI searched its CRS system using multiple variations of his name as well as his date of birth. Seidel FBI Decl. (Ex. A) at 10 ¶ 28. FBI did not locate any responsive records. *Id.* After Mr. Stoufer filed the present lawsuit, the FBI conducted another search of the CRS system and again confirmed that it had no responsive records. *Id.* at 11 ¶ 29.

## II. STOUFER'S FOIA REQUEST TO DOJ-OIG.

**Procedural history.** By letter dated July 16, 2019, Mr. Stoufer submitted a FOIA request to DOJ-OIG seeking "any reports, reviews, guidelines or memos involving me." Waller DOJ-OIG Decl. (Ex. B) at 9 (the FOIA request); *accord* Dkt. 29 ¶ 12. DOJ-OIG acknowledged receipt and assigned it tracking number 19-OIG-332. Waller DOJ-OIG Decl. (Ex. B) at 11; *accord* Dkt. 29 ¶13. On August 26, 2019, DOJ-OIG responded to Mr. Stoufer's request and produced three pages of responsive materials, explaining that it made certain redactions pursuant to identified FOIA exemptions. Waller DOJ-OIG Decl. (Ex. B) at 13; *see also* Ex. C (the

produced records). *But see* Dkt. 29 ¶ 16 (Mr. Stoufer alleging that DOJ-OIG "has not provided any responsive records"). Mr. Stoufer filed an administrative appeal, which DOJ-OIP denied. Waller DOJ-OIG Decl. (Ex. B) at 16; *accord* Dkt. 29 ¶ 15. While the administrative appeal was pending, DOJ-OIG conducted another search of its records and did not locate any additional responsive documents. Waller DOJ-OIG Decl. (Ex. B) at 6-7 ¶ 15.

**DOJ-OIG's search for responsive information and redactions.**

DOJ-OIG is responsible for investigating misconduct allegations against DOJ employees and auditing and inspecting DOJ programs. Waller DOJ-OIG Decl. (Ex. B) at 2 ¶ 2. DOJ-OIG maintains an Investigation Data Management System (IDMS), which is the database of all of its investigative records. *Id.* at 3 ¶ 7. These records are indexed by the name of the subject(s) and/or by the name of the complainant. *Id.* at 2 ¶ 3. If DOJ-OIG had information that was responsive to Mr. Stoufer's request, that information would be in IDMS. *See id.* at 3-4 ¶¶ 7-8.

DOJ-OIG searched IDMS using Mr. Stoufer's name and also using his social security number. Waller DOJ-OIG Decl. (Ex. B) at 3 ¶ 7. DOJ-OIG found three pages of records, which it released to Mr. Stoufer with limited redactions. *Id.* at 4 ¶ 9; *see also id.* at 13 (explanatory letter); Ex. C (the

*Stoufer v. DOJ*                                    -7-
Case No. 3:20-cv-00046-SLG

released records).   These records all reflected Mr. Stoufer's prior complaints to DOJ-OIG about alleged illegal surveillance being conducted by the FBI against him.   *See* Ex. C.   DOJ-OIG redacted certain personally identifiable information pursuant to FOIA Exemption 6 after concluding that the privacy interest of the individuals to whom the information pertained outweighed the public interest in disclosure.   Waller DOJ-OIG Decl. (Ex. B) at 4-6 ¶¶ 11-12, 14; *see also id.* at 13 (explanatory letter); Ex. C (the released records).   DOJ-OIG further relied on FOIA Exemption 7(C) to support the same redactions, after concluding that these were law enforcement records and that the privacy interest of the individuals to whom the information pertained outweighed the public interest in disclosure.   Waller DOJ-OIG Decl. (Ex. B) at 4-6 ¶¶ 11, 13-14; *see also id.* at 13 (explanatory letter); Ex. C (the released records).

## III.   STOUFER'S FOIA REQUEST TO DOJ-OIP ON BEHALF OF DOJ-OAG.

**Procedural history.**   By letter dated May 10, 2020, Mr. Stoufer submitted a FOIA request to DOJ-OIP seeking "[a]ny any all records the Office of the Attorney General has related to me."   Brinkmann DOJ-OIP Decl. (Ex. D) at 2 ¶ 3, 11 (the FOIA request); *accord* Dkt. 29 ¶ 25.   DOJ-OIP, on behalf of DOJ-OAG, responded to Mr. Stoufer by letter, in which it stated that, after conducting a search, it had no DOJ-OAG records.   Brinkmann

*Stoufer v. DOJ*                                                    -8-
Case No. 3:20-cv-00046-SLG

DOJ-OIP Decl. (Ex. D) at 3 ¶ 5, 13.   DOJ-OIP further explained that DOJ-OAG generally does not "maintain[] records on individuals and, as such would not maintain the type of records you are seeking."   *Id.* at 13. Mr. Stoufer filed an administrative appeal, and the DOJ-OIP Administrative Appeals Staff affirmed that the Initial Request Staff conducted an adequate, reasonable search for records.   Brinkmann DOJ-OIP Decl. (Ex. D) at 3-4 ¶¶ 6-7; *accord* Dkt. 29 ¶ 27.

**DOJ-OIP's search for responsive information on behalf of DOJ-OAG.**   DOJ-OAG is responsible for the overall supervision and direction of DOJ.   Brinkmann DOJ-OIP Decl. (Ex. D) at 6 ¶ 13.   Given its senior leadership role, DOJ-OAG does not typically maintain records on individuals and, specifically, would be very unlikely to have any records regarding Mr. Stoufer.   *Id.*

DOJ-OIP processes FOIA requests on behalf of itself and the six senior leadership officers within DOJ, including DOJ-OAG.   Brinkmann DOJ-OIP Decl. (Ex. D) at 1-2 ¶ 1.   DOJ maintains records of all formal, controlled, unclassified correspondence sent to or from DOJ-OAG in a records repository called the Departmental Executive Secretariat (DES).   *Id.* at 5 ¶ 11; *see also id.* at 6-8 ¶¶ 14-16, 18.

Notwithstanding the unlikelihood that DOJ-OAG would have any records regarding Mr. Stoufer, DOJ-OIP searched DES for Mr. Stoufer's name.   Brinkmann DOJ-OIP Decl. (Ex. D) at 6-7 ¶¶ 14-16.   In the course of this search, DOJ-OIP located one reference to a letter that Mr. Stoufer had sent to DOJ generally, which had been routed to the Civil Rights Division. *See id.* at 3, 7-8 ¶¶ 5, 17-18.   In its FOIA response, DOJ-OIP informed Mr. Stoufer of this reference and indicated that he could submit a separate FOIA request to the Civil Rights Division for records relating to his letter. Brinkmann DOJ-OIP Decl. (Ex. D) at 3, 8 ¶¶ 5, 18.   DOJ-OIP located no DOJ-OAG records that were responsive to Mr. Stoufer's request, nor any reasonable leads to responsive records which would necessitate additional searches.   *Id.* at 7-8 ¶¶ 17-18.

## IV.   STOUFER'S FOIA REQUEST TO THE USMS.

**Procedural history.**   On December 14, 2018, Mr. Stoufer submitted an electronic FOIA request to USMS seeking "access to and copies of all records about me."   Luckstone USMS Decl. (Ex. E) at 7-8 (the FOIA request); *accord* Dkt. 29 ¶ 29.   USMS acknowledged receipt and asked for additional personally identifying information to verify identity, which Mr. Stoufer provided.   Luckstone USMS Decl. (Ex. E) at 7.   On May 6, 2019, USMS responded to Mr. Stoufer's request, stating that it found no responsive

records. *Id.* at 9. Mr. Stoufer did not file an administrative appeal. *Id.* at 6 ¶ 20; *see generally* Dkt. 29 ¶¶ 29-30 (no allegations about filing an administrative appeal).

**USMS's search for responsive information.** USMS is a federal law enforcement agency; it provides federal judicial security, apprehends fugitives, secures and transports federal prisoners, executes federal court orders, and assures the safety of endangered government witnesses. Luckstone USMS Decl. (Ex. E) at 2 ¶ 4. USMS maintains the Justice Detainee Information System (JDIS) database, which is the central repository for USMS prisoner and fugitive information, and an information management tool that allows each USMS division to perform their law enforcement function. *Id.* at 4, 5 ¶¶ 16, 18. If USMS had information or records responsive to Mr. Stoufer's request, that information would be in JDIS. *Id.* at 5-6 ¶ 19.

When searching for any records regarding Mr. Stoufer, USMS searched JDIS by name. Luckstone USMS Decl. (Ex. E) at 4-5 ¶ 16. USMS did not locate any responsive records. *Id.* After Mr. Stoufer filed the present lawsuit, USMS again searched JDIS and the Outlook emails records of a records custodian who receives all emails pertaining to USMS prisoners from

the District of Alaska.   Luckstone USMS Decl. (Ex. E) at 5 ¶ 17.   USMS

again confirmed that it had no responsive records.   *Id.*

## LEGAL BACKGROUND

### I.   FOIA BACKGROUND

"The basic purpose of FOIA is to ensure an informed citizenry, vital to

the functioning of a democratic society, needed to check against corruption

and to hold the governors accountable to the governed."   *NLRB v. Robbins*

*Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).   Accordingly, FOIA generally

requires the disclosure of agency records upon the request of any person.   5

U.S.C. § 552(a)(3)(A).

The right to access agency records is not unlimited:   FOIA includes

nine statutory exemptions to the general disclosure obligation.   5 U.S.C.

§ 552(b)(1)-(9).   These exemptions reflect Congress's decision "to reach a

workable balance between the right of the public to know and the need of the

Government to keep information in confidence."   *John Doe Agency v. John*

*Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 89-1497, at 6

(1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423); *accord Pickard v. Dep't of*

*Justice*, 653 F.3d 782, 790 (9th Cir. 2011) (Wallace, J., concurring) ("'Congress

established FOIA' to strike a balance between the public's interest in

knowing 'what [its] government is up to' and the 'legitimate governmental or

private interests' in withholding documents subject to FOIA's exemptions." (quoting *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 385 (D.C. Cir. 2007))).   Although the nine FOIA exemptions should be "narrowly construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), the Supreme Court has made clear that they must be given "meaningful reach and application," *John Doe Agency*, 493 U.S. at 152.

## II.   SUMMARY JUDGMENT IN FOIA LAWSUITS

A court reviews an agency's response to a FOIA request de novo.   5 U.S.C. § 552(a)(4)(B).   Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56.

Because facts in FOIA cases are rarely in dispute, "[m]ost FOIA cases are resolved by the district court on summary judgment."   *Animal Legal Defense Fund v. FDA*, 836 F.3d 987, 989 (9th Cir. 2016); *accord Lawyers' Comm. for Civil Rights v. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("As a general rule, all FOIA determinations should be resolved on summary judgment.").   Discovery is seldom necessary or appropriate.   *See Lane v. Dep't of the Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008).

An agency bears the burden of establishing the adequacy of its search for records responsive to a FOIA request. *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Similarly, the agency bears the burden of justifying the assertion of FOIA exemptions to redact or withhold documents. 5 U.S.C. § 552(a)(4)(B). To meet these burdens, an agency may rely upon reasonably detailed, non-conclusory affidavits. *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996); *Zemansky*, 767 F.2d at 571. An affidavit that "identif[ies] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption" is "commonly referred to as a '*Vaughn* index.'" *Lion Raisins Inc. v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004) (citing *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973)), *overruled on other grounds by Animal Legal Defense Fund*, 836 F.3d 987 (9th Cir. 2016).

Affidavits submitted by an agency are entitled to a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Moreover, courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. CIA*, 981 F.2d 1116, 1119-20 (9th Cir. 1992)). "Ultimately, an agency's justification for invoking

a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citation omitted).

## A.    Adequacy of a Search

Federal agencies must conduct searches that are reasonably calculated to locate all agency records responsive to a FOIA request.  5 U.S.C. § 552(a)(3)(C)-(D); *Zemansky*, 767 F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485).  "[T]here is no requirement that an agency search every record system . . . or that a search be perfect." *Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1130 (citing cases).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (quotation omitted; emphasis original).  Accordingly, "the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

To justify its search for purposes of summary judgment, an agency may provide an affidavit explaining its search in reasonable detail.  *Zemansky*, 767 F.2d at 571; *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[I]n the

absence of countervailing evidence or apparent inconsistency of proof,
affidavits that explain in reasonable detail the scope and method of the
search conducted by the agency will suffice to demonstrate compliance with
the obligations imposed by the FOIA.").   Once an agency has submitted a
non-conclusory, detailed declaration establishing that its search for
responsive records was adequate, the burden shifts to plaintiff to produce
evidence undermining the presumption of good faith that a court must give to
that declaration.   *See Lahr*, 569 F.3d at 987-88; *Laughlin v. Comm'r*, 103 F.
Supp. 2d 1219, 1222 (S.D. Cal. 1999); *see also Windel v. United States*, No.
A02-306 CV, 2004 WL 3363406, at *3 (D. Alaska Sept. 30, 2004) ("A requestor
may raise a substantial and material factual issue with regard to the
reasonableness of the search by either contradicting the agency's account of
the search procedure, or by raising evidence of the agency's bad faith in
performing the search.").   "'[T]he mere allegation of bad faith' should not
'undermine the sufficiency of agency submissions.'   Before rejecting the
affidavits, 'there must be tangible evidence of bad faith.'"   *Minier*, 88 F.3d at
803 (quoting *Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987));
*accord SafeCard Servs.*, 926 F.2d at 1200 (stating that the presumption of
good faith accorded to agency affidavits "cannot be rebutted by purely
speculative claims about the existence and discoverability of other

documents" (internal quotation omitted)); *Windel*, 2004 WL 3363406, at \*3 (plaintiff's "mere recitation" that several individuals should have been contacted as part of agency's search did not constitute evidence of bad faith).

## B.   FOIA Exemptions Invoked by DOJ-OIG

As explained above, DOJ-OIG was the only component that located records responsive to Mr. Stoufer's request.   *Supra* Factual Background, Part II.   DOJ-OIG produced those records with limited redactions of personally identifiable information pursuant to the following FOIA exemptions.

### 1.   FOIA Exemption 6

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6); *see generally Cameranesi v. United States*, 856 F.3d 626, 637 (9th Cir. 2017) (analyzing Exemption 6).   "[T]he phrase 'similar files' [has] a broad, rather than a narrow, meaning."   *Dep't of State v. The Washington Post Co.*, 456 U.S. 595, 600 (1982).   "Similar files" include records containing names, addresses, and other identifying information.   *See Forest Serv. Emps. for Envtl. Ethics v. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008) (the term encompasses any information that applies to a particular individual).

If a "similar file" implicates a "'nontrivial privacy interest,' then the agency must balance the individual's interest in personal privacy against the public's interest in disclosure." *Prudential Locations LLC v. Dep't of Hous. & Urban Dev.*, 739 F.3d 424, 430 (9th Cir. 2013), *abrogated on other grounds by Animal Legal Defense Fund*, 836 F.3d 987 (9th Cir. 2016). "[P]rivacy encompass[es] the individual's control of information concerning his or her person." *Id.* at 431 (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989)); *see also id.* at 430-31 ("The Court has emphatically rejected a 'cramped notion of personal privacy." (quoting *Reporters Comm.*, 489 U.S. at 763)). "Individuals . . . have an obvious privacy interest in being free from retaliation, harassment, embarrassment, or stigma." *Id.* "They also have a privacy interest in simply 'keeping personal facts away from the public eye.'" *Id.* (quoting *Reporters Comm.*, 489 U.S. at 769). Even the *potential* of unwanted contact or harassment by a plaintiff, media, or other third parties is a cognizable privacy interest that may be sufficient to warrant withholding under Exemption 6. *See id.* at 432.

This broad privacy interest is weighed against the narrow public interest in disclosure of the withheld information. *Id.* at 433. "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's

performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (quoting *Reporters Comm.* 489 U.S. at 773); *see also Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2012) ("In assessing the public interest in disclosure, we examine whether 'the public interest sought to be advanced is a significant one' — one 'more specific than having the information for its own sake'— and whether the requested information 'is likely to advance that interest.'" (quoting *Nat'l Archives & Records v. Favish*, 541 U.S. 157, 172 (2004))), *overruled on other grounds by Animal Legal Defense Fund*, 836 F.3d 987 (9th Cir. 2016); *Forest Serv. Emps.*, 524 F.3d at 1027 (explaining that to compel the disclosure of "employees' identities such information must 'appreciably further' the public's right to monitor the agency's action" (quoting *Reporters Comm.*, 489 U.S. at 497)).

## 2.    FOIA Exemption 7(C)

Exemption 7 allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" might be expected to produce one of six specified harms.   5 U.S.C. § 552(b)(7).   These harms include Exemption 7(C):   information that "could reasonably be

expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Exemption 7 represents a two-part inquiry: the agency must demonstrate both the threshold law enforcement purpose and the danger that at least one of the specific harms would flow from the disclosure. *See FBI v. Abramson*, 456 U.S. 615, 622 (1982).

To establish the first part of the inquiry — that the document was created for law enforcement purposes — the agency need only make a colorable claim that there is a "rational nexus" between its law enforcement duties and the underlying document. *Binion v. Dep't of Justice*, 695 F.3d 1189, 1193-94 (9th Cir. 1983). A broad range of activities falls within Exemption 7. *See Milner v. Dep't of Navy*, 562 U.S. 562, 582 (2011) (Alito, J. concurring) ("The ordinary understanding of law enforcement includes not just the investigation and prosecution of offenses that have already been committed, but also proactive steps designed to prevent criminal activity and to maintain security.").

To establish the second part of the inquiry — the risk that disclosure would give rise to one of the specified harms — requires an assessment of the relevant subsections of 5 U.S.C. § 552(b)(7):

Exemption 7(C) allows an agency to withhold records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The privacy protections for law enforcement records in Exemption 7(C) are broader than the privacy protections under Exemption 6. For instance, the risk of an unwarranted invasion of privacy need not be established on a document-by-document basis and may, instead, be established "generic[ally]," based on the categorical types of records involved. *Reporters Comm.*, 489 U.S. at 776-77. In addition, the text of Exemption 7(C) does not contain the word "clearly" before "unwarranted invasion of personal privacy," unlike the text of Exemption 6. Likewise, Exemption 7(C) lowers the risk of harm standard from "would" (as contained in Exemption 6) to "could reasonably be expected to." *Compare* 5 U.S.C. § 552(b)(7)(C), *with* 5 U.S.C. § 552(b)(6).

## ARGUMENT

The crux of Mr. Stoufer's complaint appears to be that the Defendants violated FOIA because they should have located and produced more information than what they did. *See* Dkt. 1 ¶¶ 14, 21. Broadly construing his *pro se* allegations, Mr. Stoufer may also be contesting the redactions that DOJ-OIG made in the materials that it produced. *See generally id.* ¶ 22. Defendants are entitled to summary judgment because (1) each Defendant

*Stoufer v. DOJ* -21-
Case No. 3:20-cv-00046-SLG

conducted reasonable searches for responsive materials and (2) DOJ-OIG

properly invoked FOIA exemptions when redacting portions of documents

that were otherwise responsive to Mr. Stoufer's FOIA request.

## I.     FBI IS ENTITLED TO SUMMARY JUDGMENT.

FBI conducted a reasonable search for records relating to Mr. Stoufer's

FOIA request.   *See supra* Factual Background, Part I.   After considering

Mr. Stoufer's request and requesting more explanation, FBI reasonably

concluded that Mr. Stoufer was seeking information that the FBI had

regarding Mr. Stoufer and/or information about alleged law enforcement

activities that related to Mr. Stoufer.   Seidel FBI Decl. (Ex. __) at 3, 5 ¶¶ 6,

14; *see also id.* at 49.   The FBI identified the relevant document repository —

CRS — and searched that repository in a manner that would be expected to

locate any responsive documents that might exist.   *Id.* at 10-11 ¶¶ 26-30.

The FBI found no responsive materials, and it informed Mr. Stoufer of its

findings.   *Id.* at 3-5 ¶¶ 7, 14; *see also id.* at 18, 49.   As such, FBI performed

an adequate and reasonable search for records, and it was unable to locate

any responsive materials.   *Id.* at 11 ¶ 31.   FBI is entitled to summary

judgment.

*Stoufer v. DOJ*                              -22-
Case No. 3:20-cv-00046-SLG

## II.   DOJ-OIG IS ENTITLED TO SUMMARY JUDGMENT.

DOJ-OIG conducted a reasonable search for records relating to Mr. Stoufer's FOIA request.   *See supra* Factual Background, Part II.   DOJ-OIG identified the relevant document repository — IDMS — and searched that repository in a manner that would be expected to locate any responsive documents that might exist.   Waller DOJ-OIG Decl. (Ex. B) at 3-4 ¶¶ 7-8. DOJ-OIG found three pages of responsive records, which it released with limited redactions of personally identifiable information.   *Id.* at 4 ¶ 9; *see also id.* at 13 (explanatory letter); Ex. C (the released records).   These records all reflected Mr. Stoufer's prior complaints to DOJ-OIG about alleged illegal surveillance being conducted by the FBI against himself.   *See* Ex. C.

DOJ-OIG properly invoked FOIA exemptions to redact portions of the responsive documents.   Notably, DOJ-OIG redacted certain personally identifiable information pursuant to FOIA Exemption 6 — particularly, the names of third party individuals and non-supervisory law enforcement agents — after concluding that the privacy interest of the individuals to whom the information pertained outweighed the public interest in disclosure.   Waller DOJ-OIG Decl. (Ex. B) at 4-6 ¶¶ 10-12, 14; *see also id.* at 13 (explanatory letter); Ex. C (the released records); 5 U.S.C. § 552(b)(6).   DOJ-OIG further relied on FOIA Exemption 7(C) to support the same redactions, after

*Stoufer v. DOJ*                    -23-
Case No. 3:20-cv-00046-SLG

concluding that these were law enforcement records and that the privacy interest of the individuals to whom the information pertained outweighed the public interest in disclosure.   Waller DOJ-OIG Decl. (Ex. B) at 4-6 ¶¶ 11, 13-14; *see also id.* at 13 (explanatory letter); Ex. C (the released records); 5 U.S.C. § 552(b)(7)(C).   The limited redactions fall squarely within the allowed FOIA exemptions.

As such, DOJ-OIG conducted a reasonable search for records and properly withheld portions of the responsive documents pursuant to FOIA exemptions.   DOJ-OIG is entitled to summary judgment.

## III.   DOJ-OIP ON BEHALF OF DOJ-OAG IS ENTITLED TO SUMMARY JUDGMENT.

DOJ-OIP, acting on behalf of DOJ-OAG, conducted a reasonable search for records relating to Mr. Stoufer's FOIA request.   *See supra* Factual Background, Part III.   Notwithstanding the unlikelihood that DOJ-OAG would have any records regarding Mr. Stoufer, DOJ-OIP conducted a search of the DES, which is the official records repository of, *inter alia*, DOJ-OAG and maintains records of all formal, controlled, unclassified correspondence sent to or from DOJ-OAG, in a manner that would be expected to locate responsive documents that might exist.   Brinkmann DOJ-OIP Decl. (Ex. D) at 5-8 ¶¶ 11, 14-16, 18.   DOJ-OIP located no responsive records, nor any reasonable leads to responsive records which would necessitate additional

*Stoufer v. DOJ*                              -24-
Case No. 3:20-cv-00046-SLG

searches.  *Id.* at 7-8 ¶¶ 17-18.  That said, DOJ-OIP did locate a reference to a letter that Mr. Stoufer had sent to DOJ generally, which had been routed to the Civil Rights Division.  *See id.* at 3, 7-8 ¶¶ 5, 17-18.  In its FOIA response, DOJ-OIP informed Mr. Stoufer of this reference and indicated that he could submit a separate FOIA request to the Civil Rights Division.  *Id.* As such, DOJ-OIP, acting on behalf of DOJ-OAG, performed an adequate and reasonable search for records, and it was unable to locate any responsive materials.  DOJ-OAG is entitled to summary judgment.

## IV.  USMS IS ENTITLED TO SUMMARY JUDGMENT.

USMS conducted a reasonable search for records relating to Mr. Stoufer's FOIA request.  *See supra* Factual Background, Part IV.  USMS identified the relevant document repository — JDIS — and searched that repository as well as the Outlook email account of the relevant Alaska records custodian.  Luckstone USMS Decl. (Ex. E) at 4-6, ¶¶ 16-19.  USMS found no responsive records, and it informed Mr. Stoufer of its findings.  *Id.* at 7.  As such, USMS performed an adequate and reasonable search for records, and it was unable to locate any responsive materials.  USMS is entitled to summary judgment on the merits.

USMS is entitled to summary judgment for an additional, procedural, reason:  Mr. Stoufer did not file an administrative appeal of USMS's

*Stoufer v. DOJ*                         -25-
Case No. 3:20-cv-00046-SLG

response to his FOIA request.   Luckstone USMS Decl. (Ex. E) at 5 ¶ 20. While failure to exhaust before filing a FOIA suit is not jurisdictional prerequisite, it is a "jurisprudential consideration."   *Yagman v. Pompeo*, 868 F.3d 1075, 1083-84 (9th Cir. 2017) (quoting *Hull v. IRS*, 656 F.3d 1174, 1182)).   As a jurisprudential matter, a court generally should require exhaustion unless a plaintiff demonstrates a strong basis for waiver or futility.   *Aguirre v. U.S. Nuclear Regulatory Comm'n*, No. 19-cv-1102, 2020 WL 804292, at *3 (S.D. Cal. Feb. 18, 2020).   Here, Mr. Stoufer has not offered any explanation or excuse for his failure to file an administrative appeal.   His deadline to file an administrative appeal has passed, 5 U.S.C. § 552(a)(6)(A); 28 C.F.R. § 16.8(a) (90 day appeal deadline for FOIA requests to DOJ components); *see also* Luckstone USMS Decl. (Ex. E) at 9 (FOIA response letter, informing Mr. Stoufer of the appeal deadline), and the Court should not allow him to pursue an unexhausted claim, *see* 28 C.F.R. § 16.8(e).

## CONCLUSION

Defendants have properly discharged their obligations under the FOIA, and are entitled to summary judgment.   Fed. R. Civ. P. 56.

*Stoufer v. DOJ*                                     -26-
Case No. 3:20-cv-00046-SLG

RESPECTFULLY SUBMITTED this 3rd day of November, 2020, in

Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/ John A. Fonstad
Assistant U.S. Attorney
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2020,
a copy of the foregoing was served via
first class U.S. Mail on:

Steven Stoufer
1120 Norman St. 4C
Anchorage, AK 99504
Pro se plaintiff

s/ John A. Fonstad
Office of the U.S. Attorney

*Stoufer v. DOJ*                    -27-
Case No. 3:20-cv-00046-SLG